**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


JANET ANN WARD,

       Plaintiff,

vs.                                                   Case No. 3:00-cv-1137-J-HTS

MICHAEL J. ASTRUE,
Comm. of S.S.,

       Defendant.

_____


**<u>OPINION AND ORDER</u>**[1]

**<u>I.  Status</u>**

Janet Ann Ward is appealing the Social Security Administration's denial of her claim for Disability Insurance Benefits.  Her alleged inability to work is based on problems with her memory, hands, and stomach.  Transcript of Administrative Proceedings (Tr.) at 51.  After being found not disabled by Administrative Law Judge (ALJ) Linda R. Haack on September 15, 1998, *id.* at 359, 367-69, Plaintiff appealed, but the claim file had been lost and so the case was remanded to afford the Commissioner an opportunity to find it.  *See* Order (Doc. #13) at 1. After further proceedings, Ms. Ward was ultimately found not disabled by ALJ Charles D. Romo in a Decision entered on May 7,

---

[1]    The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #5).

2004.   Tr. at 18, 24-25.   Claimant has exhausted the available administrative remedies and the case is properly before the Court. On appeal, it is argued the judge "erred when he determined that [she] did not experience a severe mental impairment and a severe impairment as a result of her hand limitations[.]"  Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #24; Memorandum) at 1, 6 (emphasis omitted).

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[2] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]"  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support

---

[2]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"    42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).   An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy.  *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260.   Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## III.  Discussion

According to Plaintiff, "[t]he evidence of record supports a determination that [her] mental and hand impairments impact upon her ability to perform work."   Memorandum at 6.   "Thus," she contends, "the decision of the ALJ that [she] can perform her past relevant work without consideration of such impairments upon her functioning is not supported by substantial evidence and [is] contrary to legal authority."  *Id.*[3]

---

[3]       In places, Claimant suggests the ALJ erred at step two of the sequential evaluation process.  *See id.* at 1, 6-7, 9, 12.   At step two an individual must merely "prove that she has a severe impairment or combination of impairments."  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).   This "is all that is required at step two."  *Council v. Comm'r of Soc. Sec.*, 127 F. App'x 473, No. 04-13128, slip op. at 4 (11th Cir. 2004) (Table) (per curiam).  However, because the ALJ proceeded to step three, he will not be faulted for failing to characterize certain impairments as severe at the second step.   It is noted, though, Ms. Ward also asserts the ALJ erred in omitting the conditions at issue from his residual functional capacity finding and subsequent analysis.  *See* Memorandum at 1, 6, 12.

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Residual functional capacity (RFC) is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairments . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *Id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.* §§ 404.1546(c), 416.946(c). According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

## A. Mental Limitations

The ALJ considered Plaintiff's mental condition at some length.  He determined

> that on or before December 31, 2000, [the date last insured (DLI),] the claimant did not have a severe mental impairment for work.  The medical records fail to show a medically determinable mental impairment that resulted in more than minimal limitation upon the claimant's ability to work for a period of at least 12 continuous months. The claimant clearly had mild depressive and anxiety disorders, but there is no credible evidence to support the claimant's allegations of panic attacks, blank spells, or other symptoms that would have interfered with her ability to work.  There is no credible evidence to support her allegations of brain damage as a result of her respiratory distress and intubation in 1994.  In December 1995, Dr. Waddell found the claimant to have normal intelligence and no evidence of significant organic brain dysfunction, particularly relating to memory, concentration, and problem solving ability.  Dr. Waddell opined that the claimant had some mild dysthymia and an anxiety disorder, not otherwise specified, but he enumerated no specific mental work-related limitations.
>
> The Administrative Law Judge notes that while the claimant sought treatment at the South County Mental Health Center until 1996, she did not seek additional treatment until she visited the Putnam Behavioral Healthcare Center in September 1998.  She was treated with medications only and was not referred for psychotherapy or inpatient treatment.  She occasionally reported some depressive symptoms and memory and concentration problems, but these were not observed or evaluated in the treatment notes. No mental work-related limitations were enumerated by anyone at the Putnam Behavioral Healthcare Center.  Subsequent consultative examinations by Dr. Amiel and Dr. Legum indicate that the claimant continued to have mild depressive and anxiety disorders, but normal activities of daily living and no evidence of a massive deterioration of immediate memory or in other aspects of her global memory functioning. Dr. Das also found no signs of organic-memory loss, confusion, perseveration, or disorientation and he noted that the claimant exhibited no evidence of memory or

- 5 -

> brain    dysfunction    during    the    neuropsychological
> evaluation completed in 1995.
>
> On or before December 31, 2000, utilizing the Psychiatric
> Review Technique Form, under the "B" criteria, the
> claimant had mild restriction of activities of daily
> living, and mild difficulties in maintaining social
> functioning.   The claimant had mild difficulties in
> maintaining concentration, persistence, or pace, and no
> evidence of repeated episodes of decompensation, each of
> extended duration.

Tr. at 22.  Accordingly, as part of his RFC assessment, the judge

described only physical limitations and noted Plaintiff "did not

have a severe mental impairment for work."  *Id.* at 23.

Apart from her own reports and testimony, diagnoses, and

Global Assessment of Functioning (GAF) scores, Claimant points to

no evidence from the relevant period purportedly showing her mental

condition was associated with work-related functional limitations.

*See* Memorandum at 7-9.  Unfortunately, a "mere diagnosis . . . says

nothing about the severity of the condition."  *Higgs v. Bowen*, 880

F.2d 860, 863 (6th Cir. 1988) (per curiam); *see also Scull v.*

*Apfel*, 221 F.3d 1352, No. 99-7106, 2000 WL 1028250, at *1 (10th

Cir. 2000) (Table) ("[D]isability determinations turn on the

functional  consequences,  not  the  causes,  of  a  claimant's

condition[.]"); *Jenkins v. Astrue*, Civil Action No. 06-0987, 2008

WL 109104, at *3 (E.D. Pa. Jan. 8, 2008) ("Mere diagnosis of a

condition . . . does not establish severity.").

Concerning GAF scores, it is noted this scale "is used to report the clinician's judgment of the individual's *overall* level of functioning." *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (emphasis added) (internal quotation marks omitted)*; see also Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004). As merely "a global reference scale [intended] to aid in . . . treatment[,]" *Jiles v. Barnhart*, No. Civ.A. 05-G-0861-S, 2006 WL 4402937, at *2 n.1 (N.D. Ala. Sept. 11, 2006), a GAF score does not itself necessarily reveal a particular type of limitation and "is not an assessment of a claimant's ability to work[.]" *Id.* (also noting the Commissioner's acknowledgment "that GAF scores do not have a 'direct correlation to the severity requirements in [the] mental disorders listings'" (quoting 65 Fed. Reg. 50,764-65 (Aug. 21, 2000))*; see also Quaite*, 312 F. Supp. 2d at 1200 (unless doctor assigns GAF number "because he perceived an impairment in plaintiff's ability to work, the score, standing alone, does not establish an impairment seriously interfering with plaintiff's ability to perform basic work activities"). Thus, an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.

Nevertheless, Ms. Ward maintains "[e]vidence dated after [her] DLI reveals that she continued to experience difficulties from her

mental health impairments that would impact upon her ability to work." Memorandum at 8. Interestingly, after discussing these records, which date from 2003 and 2004, Plaintiff declares any reliance by the ALJ upon evidence of that vintage "was improper . . . as the issue . . . was [her] mental impairments and the resulting limitations that existed prior to the expiration of her DLI." *Id.* at 9.

A claimant seeking Disability Insurance Benefits has an obligation to show she suffered from a severe impairment "on or before the last day of her insured status[.]" *Spivey v. Apfel*, 133 F. Supp. 2d 1292, 1300 (M.D. Fla. 2001). "If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability." *Burden v. Barnhart*, 223 F. Supp. 2d 1263, 1268 (M.D. Fla. 2002); *see also* SSR 74-8c ("evidence of impairment which . . . reached disabling severity after expiration of claimant's insured status cannot be basis for finding of disability"); 20 C.F.R. § 404.131.

Evidence post-dating an individual's insured status may be relevant and properly considered if it bears "upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984); *see also Cooper v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 748, 754 (E.D. Mich. 2003) ("Medical evidence that postdates the

insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status."). For example, the ALJ should consider evidence from a physician discussing the severity of an ongoing impairment or offering an opinion as to a claimant's condition prior to the date last insured. *See Basinger*, 725 F.2d at 1169. To be used for this purpose, the evidence ought to be "'reasonably proximate'" to the date last insured. *Cooper*, 277 F. Supp. 2d at 754 (parenthetically quoting *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976)).

In this case, it is undisputed Ms. Ward's last day of insured status was December 31, 2000. *See* Memorandum at 2-4, 12; Memorandum in Support of the Commissioner's Decision (Doc. #25) at 3; Tr. at 18, 24. Thus, Plaintiff was required to submit medical evidence showing she suffered from a disabling condition on or before December 31, 2000. The documentation at issue, which is from beyond that date, is relevant only as it relates to her condition prior to expiration of her insured status.

Specifically, Claimant describes an April 2003 record from Michael Amiel, M.D., an August 2003 report and July 2003 questionnaire completed by Louis Legum, Ph.D., and two progress notes attributed to Putnam Behavioral dating from October 2003 and January 2004. Memorandum at 8-9 (citing Tr. at 470, 484, 486, 503,

505).  This evidence essentially bears upon Plaintiff's condition after her DLI.  Indeed, Ms. Ward herself characterizes the first two items as revealing what she "was experiencing" at the time. *Id.* at 8.  Similarly, there is no indication the July 2003 questionnaire, *see* Tr. at 485-86, was intended to provide insight into Claimant's status preceding 2001.  The Putnam Behavioral records are mentioned due to the GAF scores assigned in 2003 and 2004. *See* Memorandum at 9.  As discussed, GAF scores do not equate directly to functional limitations.  Further, these assessments are "snapshot[s] of a" claimant "at one point in time," *Marshall v. McMahon*, Civil Action No. 07-cv-00331-EWN, 2008 WL 877207, at *14 n.10 (D. Colo. Mar. 26, 2008), and thus are not designed as retroactive appraisals.

In the Decision, the ALJ reviewed the 2003 evidence from Drs. Amiel and Legum mentioned by Plaintiff, *see* Tr. at 20-21, and it does not appear he assigned it improper weight.  Rather, it is clear the judge recognized the need to consider all records in the context of Claimant's DLI.  Throughout his analysis, he made frequent reference to the date she was last insured for benefits, *id.* at 21-24, and he was careful to couch his findings as to her mental status in terms of its existence on or before her DLI. *See id.* at 22-24.

B.   Hand Impairment

The ALJ acknowledged Ms. Ward alleged disability in part "due
to . . . hand . . . problems."  *Id.* at 18.   However, he determined
the evidence showed "she could use her upper extremities for . . .
grasping[] and fingering."   *Id.* at 21.   Ultimately, the judge
concluded "[s]he had no . . . handling limitations."   *Id.* at 23;
*cf. id.* at 21-22 ("[T]he Administrative Law Judge does not find
that the claimant's alleged wrist/hand problems following her 1994
surgery constituted a severe impairment within the meaning of the
Regulations.").

The judge noted Plaintiff had "complained of problems using
her   hands   since   they   were   restrained   during   her   1994
hospitalization[,]" and that "[s]he had some decreased fine motor
activity on the Grooved Pegboard Test" administered in 1995.   *Id.*
at 19; *see also id.* at 22; *cf. id.* at 302-03.   Additionally, he
described a 1996 examination during which she was reported to have
"exhibited some clumsiness using her hands and fingers[.]"   *Id.* at
20; *see also id.* at 22; *cf. id.* at 320.   Still, the ALJ apparently
believed this was outweighed by her ability "to button buttons and
open a door using the doorknob."   *Id.* at 22; *see also id.* at 20;
*cf. id.* at 320.   He   pointed   out   that   "in   2002,   consultative
examiner Dr. Das found the claimant to have normal grip strength
bilaterally[,] and [h]er fine and gross movements of the hands were

- 11 -

normal.   She had normal fine manipulation of the hands."   *Id.* at

22; *see also id.* at 20; *cf. id.* at 456.   The judge found "that she

could have performed her past relevant work as an apartment complex

manager and file clerk as they are generally performed in the

national economy."   *Id.* at 24.

Plaintiff points to her below average result on the Grooved

Pegboard Test, and to her testimony that "she would drop items such

as dishes, had difficulty washing her hair and would sometimes have

difficulty opening a bottle cap."   Memorandum at 10 (citations

omitted).   She suggests the limitations so disclosed would prevent

her from performing her past relevant work, which "require[d]

extensive use of her hands."   *Id.* at 11.   More particularly, "the

occupation of file clerk ([*Dictionary of Occupational Titles* (*DOT*)]

#206.387-034) requires 'frequent' reaching, handling and fingering

. . . while the occupation of apartment manager ([*DOT*] #186[.]167-

018) requires 'frequent' reaching and handling[.]"   *Id.* (footnote

omitted).

This argument is not persuasive.   The pegboard test results

may show below average "manual speed, finger-tip sensitivity, hand-

eye coordination and general dexterity[,]" Tr. at 303, and hence

reflect the quality and speed of manipulation Plaintiff was capable

of performing, but they fail to demonstrate an inability to perform

frequent operations at this level.   The testimony cited likewise

pertains to quality rather than frequency.  Importantly, the *DOT* listings for the two jobs at issue describe the general handling requirements of both as insignificant.  Moreover, the apartment complex manager occupation requires finger and manual dexterity only within the lowest one-third of the general population, excluding just the bottom ten percent.  As to the file clerk position, these abilities must exist within the middle one-third of the population*.  Cf. Love v. Apfel*, No. CIV.A.98-1244-CB-S, 2000 WL 284269, at *3 (S.D. Ala. Mar. 10, 2000) (job requiring "finger and manual dexterity only within the middle one-third of the population . . . accommodates persons of well below average dexterity").  It is apparent that even a finding of below average capacities in these domains would be immaterial.  For this reason, the ALJ's decision will be affirmed.

### IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of May, 2008.

/s/         Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
     and pro se parties, if any